UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────X
GINA GARAFOLA,
                                      Plaintiff,

-against-

MEGAN J. BRENNAN, U.S. Postmaster General,

                                      Defendant.
───────────────────────────────────X

CV: 17-1827 (JMA)(ARL)
(formerly 19-cv-3659)

**AMENDED COMPLAINT**

Plaintiff, Gina Garafola, by her attorneys SCOTT MICHAEL MISHKIN, P.C., complaining of the Defendant, alleges as follows:

## **PRELIMINARY STATEMENT**

This case is brought pursuant to Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. §701, et seq. for Defendant's discrimination based upon disability and retaliation for engagement in protected activity.

## **JURISDICTION**

FIRST:       The jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331, as this matter is raised under 29 U.S.C. §701, et seq.

## **VENUE**

SECOND:    The unlawful practices alleged below were committed within the State of New York, County of Suffolk.

THIRD:      At the time of the unlawful practices, plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

FOURTH:    The USPS conducts substantial business in Suffolk County in the State of New York.

FIFTH:      This Court is hereby the proper venue under 28 U.S.C. § 1391(b).

1

**PARTIES**

SIXTH: Plaintiff is a Fifty-Six (56) year old homosexual female.

SEVENTH: Plaintiff is an individual with a qualified disability of a herniated disc impairing her ability to work greater than eight hours per day, and forty hours per week.

EIGHTH: Plaintiff began her career with the USPS in 2002 as a letter carrier.

NINTH: Plaintiff is an employee as defined by the Rehabilitation Act.

TENTH: The USPS is an independent agency of the United States federal government responsible for providing postal service in the United States and is an employer, as defined by the Rehabilitation Act.

ELEVENTH: Brennan is the Postmaster General of the United States.

TWELFTH: Brennan became the Post Master General on or about February 2015.

**FACTS**

THIRTEENTH: Plaintiff began her dedicated career as a City Letter Carrier for the USPS in 2002 and is still currently holding that position in the Medford Post Office.

FOURTEENTH: Plaintiff's position responsibilities include: (1) routes or cases all classes of mail in sequence of delivery along an established route; (2) rearranges and re-labels cases as required; (3) withdraws mail from the distribution case and prepares it in sequence for efficient delivery independently or by another carrier along an established route; (4) prepares and separates all classes of mail to be carried by truck to relay boxes along route for subsequent delivery; (5) handles undeliverable mail in accordance with established procedures; and (6) delivers mail along a prescribed route, on a regular schedule, picking up additional mail from relay boxes as needed.

FIFTEENTH: Plaintiff's Post Master is, and has been, John Perretta ("Perretta") since on or about March 2018.

SIXTEENTH: Perretta was also Plaintiff's Supervisor from 2015 until on or about May 26, 2017, when he was transferred out of the Medford Post Office.

SEVENTEENTH: Perretta was transferred back to the Medford Post Office on or about March 2018, when he then continued his previous harassment of Plaintiff.

EIGHTEENTH: Plaintiff had a diagnosed disability since 2016 of a herniated disc affecting her ability to work more than an 8-hour day and 40 hours per week. Plaintiff also needs to have shots in her neck, head and shoulders every 2-3 months to control the pain, spasms, and headaches.

NINETEENTH: As such, Plaintiff had a documented work restriction of eight (8) hours per day and forty (40) hours per week, as specified by her physician.

TWENTIETH: Defendant and Perretta were aware of Plaintiff's disability, and her requested accommodation of a restricted work schedule as it was verbally told to them. Plaintiff's doctor's note was also submitted to Defendant and Perretta on or about 2016.

TWENTY-FIRST: On or about March 31, 2017, Plaintiff filed a pro-se action against Defendant alleging discrimination and retaliation at the hands of Perretta, and others, pursuant to Title VII based upon her gender/sexual orientation, which is indexed as 17-cv-1827.

TWENTY-SECOND: Plaintiff had also previously filed several EEO complaints against the Defendant and Perretta for allegations of disparate treatment, one which was filed May 22, 2017, just days before Perretta was transferred out of the Medford office and away from Plaintiff.

TWENTY-THIRD: On or about May 24, 2017, Plaintiff retained counsel and filed an Amended Complaint against Defendant in Federal Court, which was amended again on July 10, 2017 to allege claims of discrimination and retaliation under Title VII.

TWENTY-FOURTH: Although Plaintiff was on a restricted work schedule due to her disability, she was able to perform all the responsibilities of her position with the reasonable accommodation of an 8-hour day, and sometimes with auxiliary assistance from a co-worker.

TWENTY-FIFTH: At times, because Plaintiff was restricted to an 8-hour workday, her excessive workload would necessitate her request to Perretta for auxiliary assistance from a fellow co-worker. This was done by filling out a PS Form 3996 and submitting the request to Perretta who would either allow assistance or deny it.

TWENTY-SIXTH: On or about April 24, 2018, shortly after Perretta's return as Post Master to the Medford Post Office where Plaintiff worked, Plaintiff submitted a PS Form 3996 to Perretta and he began yelling at her, and pointing his finger at her, threatening to put her on an Emergency Placement schedule.

TWENTY-SEVENTH: Perretta also began threatening to take away all of Plaintiff's "office-work" time and make it all outside "street-time" work, which is much more physically demanding work.

TWENTY-EIGHTH: On or about May 22, 2018, Plaintiff was admonished in front of her co-workers by Perretta and told to report to the office where she was falsely accused of going to the firehouse and deviating from her route.

TWENTY-NINTH: On or about May 24, 2018, Perretta subjected the Plaintiff to increased supervision and scrutiny when he stood behind her with a clipboard, and told her she would be monitored that day.

THIRTIETH: On or about May 31, 2018, Perretta called Plaintiff in the office to have an official discussion with her about her performance and issued several negative remarks.

THIRTY-FIRST: During this time period from on or about April 2018 though June 2018, Plaintiff was continually harassed each time she requested auxiliary assistance regarding her route.

THIRTY-SECOND: Since her frequent and almost daily requests for auxiliary assistance were being made, Plaintiff was also subjected to being monitored and observed in the office and in the street at a much higher frequency than other similarly situated letter carriers that did not request reasonable accommodations of work restrictions of 8-hour days, or auxiliary assistance.

THIRTY-THIRD: Perretta also purposely humiliated Plaintiff in front of her co-workers by commenting aloud about her requests for assistance with her route.

THIRTY-FOURTH: On or about June 19, 2018, Plaintiff was again subjected to a critical observation by Perretta and Debbie Gordon, Post Master from Mastic, while she was pulling mail.

THIRTY-FIFTH: There were no other similarly situated co-workers being observed by two Post Masters, as Plaintiff was.

THIRTY-SIXTH: On or about June 21, 2018, Plaintiff was given a Pre-Disciplinary Interview by another Supervisor, Shannon Lines. Plaintiff was advised by Lines that she was being admonished for failing to follow Perretta's instructions.

THIRTY-SEVENTH: Plaintiff was then issued a disciplinary Letter of Warning on June 26, 2018 stating that she failed to follow Perretta's instructions.

THIRTY-EIGHTH: No other similarly situated letter carriers were issued Letters of Warning for pulling mail the way Plaintiff was.

THIRTY-NINTH: Because this disciplinary Letter of Warning was unjustified, Plaintiff filed a grievance regarding it on June 28, 2018, and also filed a formal EEO complaint on June 30, 2018.

FORTIETH: On or about August 10, 2018, and for the next week, Plaintiff was subjected to several more instances of retaliation at work including being micromanaged more than her similarly situated co-workers, being instructed to load her hamper in an unsafe way, and having degrading and insulting remarks made to her.

FORTY-FIRST: In addition, Plaintiff was sent a harassing text message, via the postal scanner, regarding her work progress.

FORTY-SECOND: Also, in August 2018, Perretta and Shannon Lines took control of Plaintiff's PS Form 3966 by going into the system and creating bogus times and delivery points to set Plaintiff up for failure.

FORTY-THIRD: On or about August 14, 2018, Perretta called Plaintiff in his office for a formal discussion and fabricated allegations that other co-workers felt threatened by her and were afraid of her, thereby contributing to a stressful work environment.

FORTY-FOURTH: On March 11, 2019, Plaintiff was again issued a disciplinary Letter of Warning – this time for using the bathroom at the Medford Firehouse because Perretta said it was not the closest area to her route for her to have a comfort break.

FORTY-FIFTH: It was, in fact, the closest place to use the bathroom for Plaintiff.

FORTY-SIXTH: None of Plaintiff's similarly situated co-workers were written up for using a specific place to use the bathroom.

FORTY-SEVENTH: Plaintiff then filed another EEO complaint on April 17, 2019 regarding the discrimination and retaliation she was still experiencing at work.

FORTY-EIGHTH: Plaintiff is still currently being harassed by Perretta regarding her work restriction of 8-hour days in that he is demanding that she submit a Light Duty request form to him, which is to be filled out by Plaintiff's physician.

FORTY-NINTH: Despite Plaintiff telling Perretta that she is not asking for light duty, he is still demanding her medical information and threatening the availability of her reasonable accommodation of 8-hour work days.

FIFTIETH: For example, on June 18, 2019, Perretta called Plaintiff into his office and handed her a light duty request form and told her to have her doctor fill it out. Perretta also told Plaintiff that she was trying to circumvent Article 8 work hours.

FIFTY-FIRST: The next day, on June 19, 2019, Plaintiff responded to Perretta in writing that she was not requesting light duty, and that she was just making him aware that she has a medical restriction of working only 8 hours per day and 40 hours per week.

FIFTY-SECOND: On June 21, 2019, Perretta wrote a response letter to Plaintiff stating that due to the medical documentation that Plaintiff submitted to him dated May 14, 2019, he was putting her on light duty and that she needed to complete the paperwork regarding light duty.

FIFTY-THIRD: Plaintiff also experienced further harassment from management on June 24, 2019. On this day, Plaintiff submitted a request for auxiliary assistance to Shannon Lines to request help finishing the delivery of her mail because her truck broke down that day. After submitting her Form 3996 to Lines, he began writing notations on the form in a further attempt to harass and intimidate Plaintiff. Plaintiff explained to Lines that he did not have to write on her form as she had already written on it that her truck broke down. Lines then began screaming at Plaintiff and told her to "Get off the clock!"

FIFTY-FOURTH: As a result of this interaction with Lines, on July 2, 2019, Plaintiff was issued a 7-day suspension for conduct unbecoming of a postal employee.

FIFTY-FIFTH: This severe discipline was issued right away without following the normal progressive discipline policies established.

FIFTY-SIXTH: Most recently, on September 24, 2019, Plaintiff was again issued a 7-day suspension for failure to follow instructions by Lines and Perretta. On the day at issue, September 19, 2019, Plaintiff had an overflow of mail that she was not able to deliver within the 8-hour work day. Lines refused to allow Plaintiff to work within her medical restrictions of an 8-hour day and demanded that she finish her mail delivery for the day no matter how long it took her.

FIFTY-SEVENTH: Lines was aware that Plaintiff has a doctor's order to work no more than 8 hours per day, and deliberately disregarded this medical restriction, thus putting her in physical danger.

FIFTY-EIGHTH: Fearing for her health and safety, Plaintiff refused to disobey her doctor's medical restriction and returned to the Post Office with the mail she was unable to deliver within the 8 hour day. As a result, she was suspended for 7 days.

FIFTY-NINTH: As such, Plaintiff is still continually being overly supervised, harassed, disciplined and critiqued much more than her similarly situated co-workers that have not requested reasonable accommodations, or that have not engaged in protected activity of complaining of discrimination.

SIXTIETH: Plaintiff received her right to sue on March 29, 2019 after receiving the Final Agency Decision regarding her June 30, 2018 EEO complaint.

SIXTY-FIRST: Plaintiff also received her right to sue on September 25, 2019 after receiving the Final Agency Decision regarding her April 17, 2019 EEO complaint.

## AS FOR A FIRST CAUSE OF ACTION – DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT

SIXTY-SECOND: Plaintiff repeats and re-alleges the statements contained in paragraphs ONE through SIXTY-FIRST as if fully stated herein.

SIXTY-THIRD: Plaintiff is an individual with a qualified disability of a herniated disc, for which she has been given a work restriction of 8-hour days and 40-hour work weeks.

SIXTY-FOURTH: Plaintiff is qualified for her position, and is able to perform all the essential functions of her position with a reasonable accommodation of auxiliary assistance and within her restricted timeframe of working.

SIXTY-FIFTH: Perretta and Lines are both aware of the Plaintiff's disability and her medical restriction of working within an 8-hour day and 40-hour week.

SIXTY-SIXTH: Plaintiff has been subjected to adverse employment acts by Perretta since his return as her Post Master in the Medford Post Office in Spring 2018.

SIXTY-SEVENTH: Plaintiff has also been subjected to adverse employment acts by Lines due to her medical restriction of having to work within an 8-hour day and 40-hour week.

SIXTY-EIGHTH: These acts include being yelled at and harassed for submitting her PS 3996 Form requesting assistance, being falsely accused of deviating from her route, being overly monitored and scrutinized, being called in for a Pre-Disciplinary Interview, being issued a Letter of Warning, being continually harassed about filling out a light duty request form and being suspended.

SIXTY-NINTH: These adverse acts occurred immediately after Plaintiff approached Perretta and Lines regarding her requests for assistance with her route, so that she would be able to work within the medical restrictions that she was under.

SEVENTIETH: Perretta and Lines treated Plaintiff with discriminatory animus based upon her disability and her restriction to work no more than 8 hours per day, and her requests for auxiliary assistance with her route.

SEVENTY-FIRST: As a result, Plaintiff has suffered damages including compensatory damages for the adverse treatment and stress she has experienced at work due to her disability and Defendant's discrimination against her because of it.

## AS FOR A SECOND CAUSE OF ACTION – RETALIATION UNDER THE REHABILITATION ACT

SEVENTY-SECOND: Plaintiff repeats and re-alleges the statements contained in paragraphs ONE through SEVENTY-FIRST as if fully stated herein.

SEVENTY-THIRD: Plaintiff has filed several EEO complaints against Defendant and Perretta, including one which was filed on June 30, 2018. In this June 2018 EEO complaint, Plaintiff alleges disparate treatment based upon her disability.

SEVENTY-FOURTH: Plaintiff also most recently filed an EEO complaint on April 17, 2019 alleging continued disparate treatment based upon her disability.

SEVENTY-FIFTH: Plaintiff has also previously filed a Federal Complaint against Defendant alleging discrimination under Title VII, filed July 2017.

SEVENTY-SIXTH: In addition, Plaintiff has requested reasonable accommodations for her disability of working no more than eight hours per day and forty hours per week.

SEVENTY-SEVENTH: Therefore, Plaintiff has participated in protected activity under Section 504 of the Rehabilitation Act.

SEVENTY-EIGHTH: Defendant, Perretta and Lines were aware of each instance of protected activity by Plaintiff, and admitted this during the Agency Investigation of Plaintiff's June 30, 2018 EEO complaint, and her April 17, 2019 EEO complaint.

SEVENTY-NINTH:   The adverse employment acts Plaintiff experienced due to retaliation for her protected activity include being brought in the office for a formal discussion about how she is threatening her co-workers and that they are afraid of her; being micromanaged and scrutinized for items that others do not get scrutinized about; having degrading and insulting remarks made to her; receiving harassing texts from the postal scanner at the direction of Perretta; told to load her hamper in an unsafe manner; altering her PS Form 3966 with bogus times and delivery points, issuing her a disciplinary letter for using the bathroom at the Medford Firehouse during her route, and giving her an unjustified 7-day suspension for conduct unbecoming of a postal worker without first imparting a verbal or even a written warning.

EIGHTIETH:  Most recently, Plaintiff was given another 7-day suspension for failing to follow instructions when she was directed to, but refused to, go against her doctor's orders and work longer than an 8-hour day.

EIGHTY-FIRST:     The temporal proximity of Plaintiff's protected activity of requesting assistance from Perretta and Lines, along with her EEO complaints, and the adverse employment acts she experienced directly afterward demonstrate the retaliatory animus as the root cause of these acts.

EIGHTY-SECOND:  In addition, Plaintiff's similarly situated co-workers that did not engage in protected activity were not subjected to the same adverse treatment as her.

EIGHTY-THIRD:    As a result, Plaintiff continues to suffer stress and hostility at work due to the Defendant's retaliation against her for engaging in protected activity.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

1. For all actual damages recoverable as a matter of law for Defendant's retaliation against Plaintiff pursuant to the Section 504 of the Rehabilitation Act;

2. For all compensatory damages recoverable as a matter of law for Defendant's retaliation against Plaintiff pursuant to Section 504 of the Rehabilitation Act;

3. For all punitive damages recoverable as a matter of law for Defendant's retaliation against Plaintiff pursuant to Section 504 of the Rehabilitation Act;

4. For equitable and injunctive relief;

5. For reasonable attorney's fees and costs; and

6. For such other relief as the Court may deem just and proper

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this action.

Dated: Islandia, New York
November 1, 2019

**SCOTT MICHAEL MISHKIN, PC**

By: *Kathleen A. Tirelli*
Kathleen A. Tirelli, Esq.
One Suffolk Square, Suite 240
Islandia, NY 11749
Telephone: 631-234-1154
ktirellimishkin@optonline.net