UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------------X

GINA GARAFOLA,

                 Plaintiff,

             -against-

LOUIS DEJOY, POSTMASTER GENERAL,

                 Defendant.

-------------------------------------------------------------X

**<u>ORDER</u>**
17-CV-01827 (JMA)(JMW)

**AZRACK, United States District Judge:**

On March 31, 2017, Plaintiff Gina Garafola ("Plaintiff" or "Garafola") commenced this action against her employer United States Postal Service ("Defendant" or "USPS") alleging discrimination pursuant to Title VII.   (ECF No. 1.)   On or about June 25, 2019, Plaintiff filed a second lawsuit (19-cv-3659) against the Defendant alleging discrimination and retaliation pursuant to the Rehabilitation Act.   The Court then consolidated these two actions into the above-captioned case (17-cv-1827).

Presently before the Court is Defendant's motion for summary judgment on all the claims in the Plaintiff's consolidated complaints.   (ECF No. 58.) For the reasons set forth below, Defendant's motion is GRANTED.

## I. BACKGROUND

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements.[1]   Except where indicated, these facts are not in dispute.

---

[1] Unless otherwise indicated, the facts are taken from Defendant's Rule 56. 1 Statement in support of their Summary Judgment Motion (hereafter, "Def. 56.1")(see ECF No. 60), and Plaintiff's Rule 56.1 Counterstatement (hereafter, "Pl. 56.1")(see ECF No. 61). Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counterstatement denotes that either the parties have, or the Court has, determined the underlying factual allegation to be undisputed. Citation to a party's Rule 56.1 Statement or Counterstatement incorporates by reference the documents cited therein.

A.  **Facts**

In or around 2002, Garafola commenced employment as a mail carrier at the Medford Post Office.  (See Def. 56.1 ¶¶ 2-3, Transcript of July 22, 2019 deposition of Gina Garafola, ("Garafola Dep.") at 8-9, ECF No. 60.) Garafola generally worked 7:30 a.m. to 4:00 p.m. (Def. 56.1 ¶¶ 2-3).

Garafola self-identifies as a "homosexual female." (Def. 56.1 ¶¶ 2-3; Second Amended Complaint ¶ 7; Garafola Dep. 10-11, 18-19, 21-23.)   Since 2007, she has been open about her sexual orientation at the Medford Post office.   (Def. 56.1 ¶¶ 2-3; Garafola Dep. 23.)   Garafola alleges that she was discriminated against, in various ways, for her sexual orientation.

Garafola also alleges that, in 2016, she was diagnosed with herniated discs.  (Pl. 56.1 ¶ 79.)  These herniated discs are the basis for her disability discrimination claims.  On July 20, 2016, Garafola left a doctor's note dated July 14, 2016 on the desk of her Supervisor, John Perretta ("Perretta").[2]  ((Def. 56.1 ¶¶ 45, 73; Ex. N; Second Amended Complaint ¶ 71).

This doctor note stated, without elaboration, that Garafola "is under my care and needs to be restricted to 8 hrs days + 40 hrs a week."  (Id.)  Perretta then gave the note to the Officer in Charge ("OIC") Marie Giordani ("Giordani").  (Id.)

After consulting with other employees, including USPS Occupational Health Nurse Margaret Mais, OIC Giordani was advised that Garafola's request was to be treated as a request for light duty.  Nurse Mais then forwarded a light duty package to Garafola.  (Def. 56.1 ¶¶ 45-49.)  Garafola told OIC Giordani that neither she nor her doctor requested light duty.  (Def. 56.1 ¶¶ 45-49.)  Garafola objected because the light duty documents requested "private and privileged"

---

[2]  The record contains an identical doctor's note dated February 11, 2016.  (Def. 56.1, Ex. N.) However, Plaintiff does not allege that Defendant was aware of or received this earlier dated note before July 20, 2016 when she submitted the doctor's note dated July 14, 2016.

medical information.   (Def. 56.1 ¶¶ 45-49, 50-51.) She never submitted the medical packet to her doctor for completion.   (Def. 56.1 ¶¶ 50-51.)

Garafola, however, was never actually placed on light duty.   (Def. 56.1 ¶ 51.)   After she submitted this doctor's note, USPS followed her doctor's order that she be restricted from working more than eight hours in a day and more than forty hours in a week.   (Def. 56.1 ¶ 52; Garafola Dep. 141.)

Garafola subsequently submitted another doctor's note, dated March 3, 2017, (Def. 56.1, Ex. Q), in which her doctor again limited her to 8 hours a day and 40 hours a week.   (Def. 56.1 ¶¶ 53.)   Additionally, in this note, the doctor checked off a box which stated that Garafola was "[not disabled [and was] capable of working full-time and performing duties and activities required." (Def. 56.1 ¶¶ 53.)   This document included fields for the doctor to provide information about any restrictions the patient may have concerning heavy lifting, prolonged sitting and standing, and repetitive bending.   (Def. 56.1, Ex. Q.)   Garafola's doctor left each of these fields blank.

Garafola alleges that she was discriminated against, in various ways, because of her disability.   She also alleges that she was retaliated against for requesting a reasonable accommodation and then exercising that accommodation.

Garafola also alleges that she has been retaliated against, in various ways, for filing EEO claims complaining of discrimination and retaliation.   In 2010, Garafola's filed her first EEO claim, alleging that her supervisor at the time, Scott Collins, discriminated against her based on her sexual orientation and gender and also retaliated against her.   In August 2016, Garafola filed an amended EEO complaint alleging that Perretta—her then-supervisor—retaliated against her. (Second Amended Complaint ¶¶ 93-103).

In March 2017, Plaintiff filed her first lawsuit, which alleged discrimination claims pursuant to Title VII. (See 17-cv-01827, ECF No. 1.) In June 2019, Plaintiff filed her second lawsuit alleging against the Defendant claims of discrimination and retaliation pursuant to the Rehabilitation Act.   (See 19-cv-3659, ECF No. 1.) Plaintiff alleges that she was retaliated against, in various ways, for filing EEO claims and for filing and litigating her lawsuits against Defendant.

As discussed infra, between 2015 and 2019, Garafola received multiple letters of warning, which she claims were the result of discrimination and/or retaliation.   Many of these letters have been expunged after Plaintiff filed grievances through her union.

Employee discipline in the USPS is progressive.   (Def. 56.1 ¶ 8)   The first step is a letter of warning.   (Id.)   A letter of warning may result in a notice of a 7-day and then a 14-day suspension if the misconduct is not corrected and is repeated.   (Id.)   Finally, if the misconduct persists, it may result in a notice of termination.   (Def. 56.1 ¶ 8; Deposition of John Perretta ("Perretta Dep.") 19-20, 50-52; Ex. D).

In addition to these letters of warning, Garafola claims to have been subjected to a myriad of other adverse actions, including increased supervision, generally, and denial of auxiliary assistance for when she cannot complete her route in eight (8) hours.   However, she admits that: she was never suspended or terminated, she lost no salary; she was not denied promotional opportunities; her route was not changed in any way; and her work hours were not changed.   (Def. 56.1 ¶¶ 45-48.)

## II. DISCUSSION

Defendant had moved for summary judgment on Plaintiff's consolidated complaints in their entirety on that basis that Plaintiff fails to establish a prima facie case of discrimination and

retaliation.   (See 17-cv-1827, ECF Nos. 1, 19; 19-cv-3659, ECF No. 1.)   Because the Court concludes that on the record presented, considered in the light most favorable to Plaintiff, no reasonable jury could find in her favor on her claims, Plaintiff's complaints are dismissed in their entirety.

## A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   The movant bears the burden of demonstrating that "no genuine issue of material fact exists." <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).   "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,' " while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 97 (2d Cir. 2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.   <u>See Huminski v. Corsones</u>, 396 F.3d 53, 69 (2d Cir. 2004)   In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to

eschew credibility assessments." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (internal quotation omitted); see also Maxton v. Underwriter Labs., Inc., 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see also Artis v. Valls, No. 9:10-CV-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## B. Burden of Proof in Discrimination Claim

At the summary judgment stage, courts assess a plaintiff's substantive discrimination and retaliation claims using the burden-shifting framework the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973); see Meiri v. Dacon, 759 F.2d 989, 995–98 (2d Cir. 1985).

Under this framework, the plaintiff must first offer evidence to establish a prima facie case of unlawful employment discrimination.   See McDonnell Douglas Corp., 411 U.S. at 802.   This burden is not onerous.   Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). In considering whether the plaintiff has established his prima facie case, the court "presume[s] the [ ] [employer's] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Id. at 254 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)).

Once the plaintiff makes his prima facie case, a presumption of discrimination arises, and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action.   McDonnell Douglas Corp., 411 U.S. at 802; see also Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002).

If the employer carries this burden, "the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia, 313 F.3d at 721 (quoting Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001); see also Burdine, 450 U.S. at 253.   "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

## C.  **Plaintiff's Disability Discrimination Claims Fail**

### 1.  **Discrimination under the Rehabilitation Act**

The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" 29 U.S.C. § 794(a).

To survive a motion for summary judgment, a plaintiff bears the burden of establishing a prima facie claim of employment discrimination under the Rehabilitation Act.   Veldran v. Brennan, 408 F. Supp. 3d 111, 114-14 (E.D.N.Y. 2019), aff'd sub nom. Veldran v. Dejoy, 839 F. App'x 577 (2d Cir. 2020) (quotations omitted).   To do so, a plaintiff must show: "(1) she is disabled within the meaning of the Act; (2) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; (3) she suffered an adverse employment action due solely to her disability; and (4) her employer receives federal financial assistance."   Id. (citing Heilweil v. Mt. Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994) and Gentile v. Potter, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007)).   "Failure to establish even one of these four elements is fatal to a claim of employment discrimination." Veldran, 408 F. Supp. 3d at 11 (internal citations omitted).

As explained below, summary judgment is appropriate on Plaintiff's disability discrimination claims because she fails to establish that she is "disabled" within the meaning of the Rehabilitation Act.   Additionally, Defendant is also entitled to summary judgment on the disability discrimination claims because Plaintiff has not suffered an adverse employment action.

## 2.   Plaintiff Does Not Meet The Definition Of "Disabled"

First, a plaintiff must establish that she is "disabled" within the meaning of the Rehabilitation Act, which follows the standards set out in the Americans with Disabilities Act ("ADA").   See Davis v. New York State Off. of Mental Health, No. 05-CV-5599, 2009 WL 5178440, at *7 (E.D.N.Y. Dec. 31, 2009) (applying ADA definition of "disabled" to Rehabilitation

Act claim); see Mazzeo v. Mnuchin, 751 F. App'x 13, 15 (2d Cir. 2018) (citing 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B)).

The ADA provides that a plaintiff is disabled if she (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." Id.; Davis, 2009 WL 5178440, at *7.   Notably, "not every physical or mental impairment serves to establish an actual disability," McDonald v. City of New York, 786 F. Supp. 2d 588, 606 (E.D.N.Y. 2011).   As discussed below, because the Court finds Plaintiff is not an individual with a "disability" under any of the three categories, Plaintiff's disability discrimination claim fails as a matter of law.

### i.   First Category: Plaintiff Does Not Have "Physical or Mental Impairment(s) That Substantially Limits One or More Major Life Activities"

The Supreme Court has established a three-step inquiry to determine whether a plaintiff establishes a showing of actual disability.   Veldran, 408 F. Supp. 3d at 115; (citing Bragdon v. Abbott, 524 U.S. 624 (1998); see also Weixel v. Bd. of Educ., 287 F.3d 138, 147 (2d Cir. 2002); McDonald, 786 F. Supp. 2d 588, at 606.

First, the court must determine whether the plaintiff suffers from a physical or mental impairment.   Veldran, 408 F. Supp. 3d at 115 (internal citations and quotations omitted); see also McDonald, 786 F. Supp. 2d 588, at 606.   Next, the court must identify the major life activities which may have been limited by the impairment.   Id.   Third, the court must determine whether the specified impairment "substantially limits" those major life activities.   Id.   The Rehabilitation Act does "not consider every impaired person to be disabled ... [and] courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." Id. (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir.

9

1998)(emphasis in original)).   Major life activities include, but are not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 36.104.

Plaintiff argues that she satisfies the first category's criteria, because she suffers from a physical impairment—herniated discs—which cause her "severe pain" and thus affect her "ability to walk, sit for long periods of time, stand, and carry bags/satchels over her shoulders," among other limitations.   (Pl's Opp. at 6.)

"Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which [s]he claims [s]he is subject due to [her] condition, [s]he cannot establish that [s]he is disabled within the meaning of the ADA." Farina v. Branford Bd. of Educ., No. 3:09-CV-49, 2010 WL 3829160, at *12 (D. Conn. Sept. 23, 2010), aff'd, 458 F. App'x 13 (2d Cir. 2011) (citations omitted); see also Cotz v. Mastroeni, 476 F.Supp.2d 332, 369 (S.D.N.Y. 2007) (granting summary judgment against plaintiff offered only "unsubstantiated allegations" and "no medical evidence to substantiate or further elaborate her allegations" of having two herniated discs)

Plaintiff's affidavit concerning her alleged limitations cannot satisfy this standard.[3]   (Pl. 56.1, Ex. 1.)   "Absent medical documentation demonstrating how, and to what extent, plaintiff is limited in a major life activity, plaintiff's own statements are insufficient to establish disability within the meaning of the Rehabilitation Act, and therefore her claim under this prong of disability must be dismissed as a matter of law." Sweeney v. Shinseki, No. 06 CV 1285, 2010 WL 11623597, at *6 (E.D.N.Y. Dec. 30, 2010)(citing Ragusa v. Malverne Union Free Sch. Dist., 381 Fed. App'x.

---

[3]  Defendant adds that it sought, but never received, Plaintiff's medical records and information.   Plaintiff has provided no explanation in her papers for the lack of medical records substantiating her disability.

85, 88 (2d Cir. 2010)); see also Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir.1994) (concluding that plaintiff failed to establish disability where, inter alia, she offered "[n]o medical proof").

The only relevant medical records in evidence are two doctor's notes.   However, both of these are insufficient to establish that Plaintiff's alleged impairment "substantially limits" any major life activities.   Both notes simply state that Garafola cannot work more than 8 hours per day and 40 hours per week.   These notes contain no specific diagnosis or further elaboration on Plaintiff's limitations such as her ability to carry out work tasks (e.g., standing, walking, sitting, or carrying items).   (See Def. 56.1, Exhibits N, Q.)   The doctor's note dated March 3, 2017 also opined that Plaintiff was "[n]ot disabled, capable of working full-time and performing duties and activities required." (Id.) And, this same note did not indicate any restrictions regarding lifting, standing, bending, kneeling despite the fact that the form used by the doctor provided fields to input any such limitations. (Id.)

Given that these notes assert that Plaintiff's only limitations are working 8 hours per day and 40 hours per week, the only major life activity Plaintiff may be able to rely on is "working." When a plaintiff asserts that their impairment substantially limits "working," the plaintiff must establish that the impairment "substantially limit[s] employment generally." Frost v. Dep't of Developmental Servs., No. 3:19-CV-1572, 2022 WL 462409, at *5 (D. Conn. Feb. 14, 2022) (citing Joyce v. Suffolk Cnty., 911 F. Supp. 92, 95 (E.D.N.Y. 1996) (quotation and citations omitted)).   In this context of "working," "'substantially limit[ed]' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."   Potenza v. City

of New York, 95 F. App'x 390, 391 (2d Cir. 2004) (citing 29 C.F.R. § 1630.2(j)(3) and Sutton v. United Air Lines, Inc., 527 U.S. 471, 491–92 (1999)).

Plaintiff has presented no evidence that she is precluded from performing a class of jobs or a broad range of jobs.   Her impairment—which purportedly limits her to only working eight (8) hours a day and forty (40) hours a week—is insufficient to establish that she is substantially limited in "working."   Boitnott v. Corning Inc., 669 F.3d 172, 175 (4th Cir. 2012) ("All circuit courts which have addressed this issue have held that an employee under the ADA is not "substantially" limited if he or she can handle a forty-hourwork week but is incapable of performing overtime due to an impairment.).

There is simply no evidence in the record from a reasonably jury could conclude that Plaintiff's impairment substantially limited a major life activity.   Therefore, her cannot establish that she has an actual disability.

### ii.   Second Category: Plaintiff Does Not Have A "Record Of" A Substantially Limiting Impairment

For the similar reasons, Plaintiff cannot establish she is an individual with a disability under the second category.   The Rehabilitation Act provides that a plaintiff can also demonstrate she is "disabled," if she has a "record of" or "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. sec. 1630.2(k).   See Veldran, 408 F. Supp. 3d 111, at 115; McDonald, 786 F. Supp. 2d 588, at 606.

Plaintiff points out that she received approved Family and Medical Leave ("FMLA") to seek treatment for her herniated discs and insists that this evidence is, standing alone, sufficient to establish a "record of" being disabled.   (Pl's Opp. at 7; Pl. 56.1, Ex. 1.)   The Court disagrees. To satisfy the second category, "[t]he record must be one that shows an impairment that satisfies

the ADA [and thus the Rehabilitation Act]; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." Skinner v. City of Amsterdam, 824 F. Supp. 2d 317, 327 (N.D.N.Y. 2010) (citing Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 645 (2d Cir. 1998); 29 C.F.R. § 1630.2[k].

Plaintiff cites to no authority indicating that the mere approval of Plaintiff's FMLA leave is sufficient to establish a record of being disabled.   As explained above, the only medical records here are insufficient to establish that Plaintiff's impairment substantially limited a major life activity.   Accordingly, Plaintiff fails to establish that she is disabled under the second category.

### iii.    Third Category: Plaintiff Was Not "Regarded As" Having A Disability

Plaintiff is also foreclosed under the third category available and therefore cannot also establish a prima facie case, because she was not "regarded as" having a disability by her employer. Under the third category, a claim of discrimination may also arise when a plaintiff is "regarded as" disabled by the defendant.   To prove a disability under the "'regarded as' disabled" prong of the Rehabilitation Act, plaintiff must show that her employer erroneously believed that she was substantially limited in her ability to work [] or perform another major life activity.   Davis, No. 05-CV-5599, 2009 WL 5178440, at *10 (E.D.N.Y. Dec. 31, 2009) (cleaned up) (citing Emanuel v. N.Y., No. 08–CV–1250, 2009 WL 4277075, at *7 (S.D.N.Y. Nov. 25, 2009).

The relevant inquiry is whether the employer perceived the plaintiff "as disabled within the meaning of the [Rehabilitation Act], not whether [plaintiff] was actually disabled." Eshelman v. Agere Sys., Inc., 554 F.3d 426, 434 (3d Cir. 2009) (citing Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005)).   In effect, where a defendant is aware of plaintiff's ailments," Plaintiff still must present evidence "to suggest that [defendant] viewed [her] as disabled within the

meaning of the [Rehabilitation Act], that is, as possessing a medical condition that substantially limited [her] ability to work." Skinner, 824 F. Supp. 2d 317, at 328 (internal citation omitted).

Plaintiff argues that Perretta was aware of her disability because he received Plaintiff's doctors' notes and Defendant "followed her doctor's orders" in initially approving her for light duty. (Pl's Opp. at 7; Pl. 56.1 ¶ 52.)   Plaintiff also relies on the fact that Perretta was also orally told about her "restriction," which presumably refers to the accommodation she ultimately received.   (Pl. 56.1 ¶ 81.)

These assertions, without more, are insufficient because they fail to prove that Defendant regarded her as being "substantially limited" in any life activity.

The record evidence indicates that when Plaintiff was ordered to "light duty" based on the doctor notes she provided, she objected, was never actually placed on light duty, and was provided the restriction specified by her doctor, who had only disclosed that she was limited to working 8 hours per day and 40 hours per week.   (Def. 56.1 ¶¶ 49-51.) Further, Peretta indicated that he was not aware of her disability, only of her time restricted limitation.   (Pl. 56.1, Ex. 8 at 2.)

Even if Defendant was aware of those specific limitations, here those limitations do not substantially limit Garafola's ability to work.   As such, a reasonable jury could not find that Plaintiff was regarded as disabled.

As Plaintiff cannot meet the first element of her prima facie case, her disability discrimination claims fail.   Moreover, even assuming arguendo that Plaintiff could establish that she meets the first element of her prima facie case, she cannot establish that she was subjected to any cognizable adverse actions.

### 3.   Plaintiff Has Not Suffered Any Adverse Employment Actions for Her Disability Discrimination Claims

i. *Legal Standard*

In determining whether Plaintiff suffered an adverse employment action, the following

standard applies:

> "A plaintiff sustains an adverse employment action if he or she endures a materially
> adverse change' in the terms and conditions of employment."   Galabya v. New
> York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000).   To qualify as materially
> adverse, a change in working conditions must be "'more disruptive than a mere
> inconvenience or an alteration of job responsibilities.'"   Vale v. Great Neck Water
> Pollution Control Dist., 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015) (quoting
> Galabya, 202 F.3d at 640)."   Examples of materially adverse employment actions
> include termination of employment, a demotion evidenced by a decrease in wage
> or salary, a less distinguished title, a material loss of benefits, [and] significantly
> diminished material responsibilities . . . ."   Feingold v. New York, 366 F.3d 138,
> 152 (2d Cir. 2004) (internal quotation marks and citation omitted).

Kelly v. New York State Off. of Mental Health, 200 F. Supp. 3d 378, 396 (E.D.N.Y. 2016).   This

standard governs discrimination claims under the Rehabilitation Act, the ADA, and Title VII.   Id.

ii. *Letter of Warning*

Plaintiff claims she was subjected to an adverse action when she received a letter of

warning for "Improper Conduct" on July 28, 2016 for her conduct involving her July 20, 2016

doctor's note and the issue of light duty.   This letter of warning was eventually removed after

Plaintiff successfully grieved it.

This letter of warning does not constitute an adverse employment action.   As a general

matter, the Second Circuit counsels that "oral and written warnings do not amount to materially

adverse conduct."   Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007).   This is

particularly true where, as occurred here, the alleged claims are "the application of the employer's

disciplinary policies to the employee."   Id. (citing Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.

2006).   Additionally, courts have found that letters of warning issued by the USPS are not adverse

employment actions. See Glover v. Donahoe, No.12-CV-189, 2013 WL 6183891, at *4 (D. Conn. Nov. 25, 2013) (collecting cases and noting "[s]everal courts outside this Circuit have held in the context of the USPS that "a letter of warning is generally considered insufficient to qualify as an adverse employment action.) (internal citations omitted).

### iii. Denials of Plaintiff's Requests for Auxiliary Assistance

Plaintiff maintains that she suffered adverse employment actions when her requests for auxiliary assistance were denied.

A postal carrier can file a request for auxiliary assistance if the carrier expects that she will be unable to deliver all of her assigned mail by the end of her shift. (Pl. 56.1 ¶ 67; Perretta Dep.; 54.) When a postal carrier is unable to finish delivering all of the mail on her route by the end of her 8-hour shift, she can also file a request for auxiliary assistance in the afternoon or at the end of their shift. (Perretta Dep. 55.) If the request for auxiliary assistance is granted, then another postal carrier will be assigned to deliver the undelivered mail. (Perretta Dep. 62.) The record does not clearly explain what happens to the requesting postal carrier if her request for auxiliary assistance is denied. It appears that if the request for auxiliary assistance is denied, then, ordinarily, the requesting postal worker would have to extend her shift and finish delivering this mail.

However, Garafola was given an accommodation—beginning in approximately July 2016—that restricted her from working longer than an eight-hour shift. Because of this accommodation, when Garafola submitted a request for auxiliary assistance and her request was denied, she would not be required to work longer than eight hours that day. (Garafola Dep. 140-141.)

16

Plaintiff alleges that she was subjected to an adverse action when Perretta denied her 30 minutes of auxiliary assistance on April 20, 2017.   (Pl's Opp. at 6.)   This denial occurred after she began receiving her scheduling accommodation and, thus, she was not required to do any additional work as a result of this denial.   The April 20, 2017 denial of her request for auxiliary assistance was not an adverse employment action.   See Danielson v. Brennan, 764 F. App'x 622, 623 (9th Cir. 2019) (finding that denial of auxiliary assistance request was not an adverse action for purposes of retaliation claim under the FLSA where the plaintiff had restricted hours and could not be forced to work in excess of eight hours per day).

Plaintiff also asserts that, when she requested auxiliary assistance, Perretta automatically denied the full amount and approved only a portion of the time requested.   (Pl's Opp. at 6.) Plaintiff, however, does not identify any specific denials.   Nor does she identify when any of these denials occurred.   In any event, irrespective of when these denials, if any, occurred, these denials do not constitute adverse employment actions.

As explained above, any denials after July 2016—when Plaintiff received her restricted schedule as an accommodation—are not adverse employment actions.   Additionally, even if any denials occurred prior to July 2016, Plaintiff has not met her burden of proving that those denials constitute adverse employment actions either.   As an initial matter, Plaintiff does not identify what happened to her when any such requests for auxiliary assistance were denied.[4]   Even assuming arguendo that the denial of a request for auxiliary assistance required Plaintiff to work some additional amount of time at the end of her shift, such denials were still not adverse employment actions.   See Ogden v. Potter, 397 F. App'x 938, 939 (5th Cir. 2010) (indicating that denial for

---

[4]   To the extent Plaintiff may have had to work any additional time to complete this mail delivery, Plaintiff has not identified the amount of additional time she had to spend after the end of her eight-hour shift.

auxiliary assistance likely does not constitute an adverse employment action for purposes of Title VII retaliation claim); cf. Moore v. Henderson, 174 F. Supp. 2d 767, 776 (N.D. Ill. 2001) (finding that postal worker who was required to work overtime did not suffer an adverse employment action for purposes of discrimination claim).

    *iii.   Remaining Actions Do Not Constitute Adverse Employment Actions*

Plaintiff also contends that the following incidents rise to the level of adverse employment actions:

- After Plaintiff submitted her doctor's note on July 20, 2016, Defendant attempted to place her on light duty despite her ability to perform her job.   However, Plaintiff was never actually placed on light duty.

- In addition to receiving a letter of warning on July 28, 2016 in connection with the July 20 doctor's note, Defendant and its employees took other actions against Plaintiff concerning this incident.   Plaintiff was reported to the Postal Inspectors and OIC Giordani filed a police report against Plaintiff about this incident. Although the Postal Inspector found that there was not a credible threat, OIC Giordani continued to push for action against Plaintiff even though Plaintiff had already undergone a Pre-Discipline Interview for this incident.

- On April 20, 2017, Perretta not only denied Plaintiff 30 minutes of auxiliary assistance, but also conducted a driver's observation of her.

- In April 2018, after Plaintiff submitted a PS 3996 form to Perretta, he began yelling at her, pointing his finger at her, and threatening to put her on an Emergency Placement Schedule.

    (Pl's Opp. at 5–6.)

None of these incidents constitute adverse employment actions.   For example, "excessive scrutiny and criticism on the job" do not constitute adverse employment actions.   Tepperwein v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 570 (2d Cir. 2011); Bowen–Hooks v. City of New York, 13 F.Supp.3d 179, 216–17 (E.D.N.Y. 2014); cf. Uddin v. City of New York, 427 F.Supp.2d 414, 429 (S.D.N.Y. 2006)(Scrutiny and criticism can qualify as adverse actions only when they

lead to other negative results such as a decrease in pay or being placed on probation.)(internal quotation marks and citation omitted).

As Plaintiff has not established that any of the incidents she cites rise to the level of an adverse employment action, her disability discrimination claims necessarily fail.

### D.   Plaintiff's Title VII Discrimination Claims Fail

#### 1.   Discrimination under Title VII

Title VII provides, in relevant part, that it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).  "[A]n unlawful employment practice is established when the complaining party demonstrates that ... sex ... was a motivating factor for any employment practice even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

In order to establish a prima facie case in a disparate treatment case, a plaintiff must demonstrate that (1) she belongs to a protected class, (2) she was qualified for the job, (3) she suffered adverse employment action, and (4) the circumstances give rise to an inference of discrimination."  Weinstock v. Columbia Univ ., 224 F.3d 3 , 42 (2d Cir. 2000 ) (citing McDonnell Douglas, 411 U.S. at 802).

#### 2.   Plaintiff Has Not Suffered Any Adverse Employment Actions for Her Title VII Discrimination Claims

Discrimination claims under Title VII use the same standard for adverse employment actions as discrimination claims under Rehabilitation Act and the ADA.  Kelly, 200 F. Supp. 3d at 396.   None of the actions Plaintiff cites meet this standard.

For her Title VII discrimination claim, she relies on two warning letters.   (Pl's Opp. at 14;

Def. 56.1 ¶ 15, Ex. F.)   On July 3, 2015, she received a letter of warning for failure to curb the

wheels of her postal vehicle.   This letter of warning was rescinded after Plaintiff filed a grievance.

(Id.)   On April 23, 2016, she received a letter of warning for failure to operate her postal vehicle

in a safe manner.   She was also subjected to a pre-disciplinary interview for this incident.   After

Plaintiff grieved the April 23, 2016 letter, it was reduced to a "discussion."   (Def. 56.1 ¶ 21.)

Plaintiff does not allege that she experienced any consequences due to the above-

referenced letters of warning such as a loss of salary, denial of promotion, an action equivalent to

a demotion, or something of material impact.   These two letters of warning and the related pre-

disciplinary interview and "discussion" are not adverse employment actions.   See Glover, 2013

WL 6183891, at *4.

Plaintiff also relies on a June 2016 incident where she was subjected to "increased

supervision when she was followed to the firehouse where she made restroom stops."   (Pl's Opp.

at 15; Def. 56.1 ¶¶ 34-35.)   "Upon her return to the Post Office she was told her use of the

firehouse restroom cost her too much time."   (Id.)   Excessive scrutiny and a directive not to use

one bathroom on Plaintiff's route do not constitute an adverse employment actions.

Plaintiff testified that as to each of the incidents of alleged discrimination she suffered no

adverse consequences.   (Def's Mot. at 10.)   As Plaintiff has not established that she suffered any

adverse employment actions, her Title VII discrimination fails.

### 3.   Plaintiff Cannot Established an Inference of Discrimination

Even if Plaintiff could establish that some or all of these incidents constituted adverse

employment actions, she cannot establish an inference of discrimination.   None of the arguments

20

raised in opposition brief on this point are persuasive.

In support of her claim that the April 23, 2016 warning letter was discriminatory, Plaintiff cites to a report that purportedly identifies "disparaging trends" in discipline related to this incident.   However, nothing in this report raises an inference of discrimination.   (Pl. 56.1 ¶ 21.)   The report does not indicate that Plaintiff was treated differently than any similarly situated individuals outside of her protected class.

Plaintiff also claims that discrimination occurred when she received "increased supervision" and "was followed to the firehouse where she made restroom stops." (Def. 56.1 ¶¶ 34-35.)   Plaintiff testified that her female and male co-workers were never followed and that she knew this fact "through conversation"   (Garafola Dep. 125.)   That testimony, however, is inadmissible hearsay.   The only other evidence Plaintiff cites in support of this purported disparate treatment is an unsworn grievance that union filed on her behalf about this incident.   (Pl. 56.1, Ex. 7.)   This grievance alleges that no other carrier has been questioned about a comfort stop location or been scrutinized to this level.   However, this unsworn grievance is not admissible to establish the truth of the allegations set out therein.[5]

None of the evidence Plaintiff cites in her brief raises an inference of discrimination.   The Court therefore grants Defendant's summary judgment on Plaintiff's gender and sexual orientation discrimination claim.

**B.   Plaintiff's Retaliation Claims Fail**

    **1.   Retaliation under the Rehabilitation Act and Title VII**

---

[5]  Plaintiff also discusses this incident in connection with her retaliation claims.   In that section of her brief, Plaintiff cites to Plaintiff's Exhibit 14, which is another unsworn grievance.   This grievance recounts that "[d]uring an informal Step A meeting Perretta admitted that no other carrier had ever been instructed not to use a certain comfort stop."   (Pl. Ex. 14.)   Again, an unsworn grievance is not admissible evidence.

Retaliation claims under the Rehabilitation Act and Title VII are both governed by the McDonnell Douglas burden-shifting framework.   See Treglia, 313 F.3d 713 at 719 (applying Title VII standard to Rehabilitation Act and ADA retaliation claims); Wong v. Bd. of Educ., 478 F. Supp. 3d 229, 253 (D. Conn. 2020) ("The same burden-shifting framework for Title VII cases applies to retaliation cases under [the Rehabilitation Act] and the ADA.").

To establish a prima facie case of retaliation plaintiff must show that: (1) she was "engaged in protected activity" under the law supporting her claim; (2) "the employer was aware of that activity"; (3) the employee suffered a "materially adverse action"; and (4) there was "a causal connection between the protected activity and that adverse action." Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 718 (S.D.N.Y. 2020) (providing same elements for retaliation under ADA and Rehabilitation Act).   See also Medcalf v. Thompson Hine LLP, 84 F. Supp. 3d 313, 329 n.14 (S.D.N.Y. 2015) ("An adverse employment action has the same meaning in ADA discrimination claims as it does in the Title VII context.") (citing Adams v. Festival Fun Parks, LLC, 560 Fed. App'x. 47, 49 (2d Cir. 2014)); Noon v. Int'l Bus. Machines, No. 12–CV–4544, 2013 WL 6504410, at *6 (S.D.N.Y. Dec. 11, 2013) ("Second Circuit has invoked [the definition of Title VII retaliation claims] for ADA retaliation claims as well.") (citations omitted).

Because the Court finds that Plaintiff fails to establish the third element—whether she was subjected to materially adverse action by Defendant—the Court limits its inquiry to that issue.

To be "materially adverse," an employer's actions must "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc., 531 F. Supp. 3d 522, 543 (N.D.N.Y. 2021)(citing Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2014).

Plaintiff alleges that all of the actions below constitute adverse employment actions for purposes of her retaliation claims:

- On June 16, 2016, Plaintiff was informed that she should no longer use the comfort stop at Christopher Court.

- On July 21, 2016, Plaintiff was subjected to a pre-discipline Interview ("PID") concerning the her July 20 doctor's note.  (Pl. 56.1 ¶¶ 103-104).  On July 28, 2016, Plaintiff was issued a letter of warning for Improper Conduct in connection with the doctor's note.  Plaintiff grieved the letter of warning, which was ultimately expunged.

- On April 20, 2017, Perretta denied Plaintiff 30 minutes of auxiliary assistance and conducted a driver's observation on her.  (Pl. 56.1 ¶¶ 109-110).

- On May 25, 2017, Plaintiff was subjected to a PID with Perretta.  (Pl. 56.1 ¶ 114). The very next day, Plaintiff was issued a letter of warning from Perretta for Improper Conduct.  (Pl. 56.1 ¶ 115).  Plaintiff grieved this letter of warning through her union and the Dispute Resolution Team, at Step B, found that the grievance had merit and directed management to rescind the letter of warning and expunge it from Plaintiffs record.  (Pl. 56.1 ¶ 116).

- On May 1, 2020, Plaintiff had all her office time removed and assigned to other individuals.   Now Plaintiff has no office time while other Letter Carriers do.  (Pl. 56.1 ¶ 66).

As an initial matter, Plaintiff cannot rely on her claim that, on May 1, 2020, she had all her office time removed.   (Pl. 56.1 ¶ 66).   As Defendant correctly points out, this claim is not alleged in Plaintiff's most recent complaint.   In fact, the alleged removal of Plaintiff's office time post-dates her most recent complaint.   Accordingly, the Court will not consider this claim and whether this action constitutes an adverse employment action.

As for the remaining actions cited above, none of these actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination.   The Court notes, again, that Plaintiff, by her own sworn testimony, has stated that she suffered no material adverse consequences to her employment terms and conditions as a result of these actions (i.e., "she lost

no salary; she was not denied promotional opportunities; her route was not changed in any way; her work hours were not changed in any way; and her work was not affected in any way").

The two letters of warning—which were both expunged—are not adverse employment actions.   See Ogden, 397 F. App'x at 939 (holding that postal carrier's rescinded letter of warning did not constitute an adverse employment action for purpose of Title VII retaliation claim); Chang, 254 F. App'x at 839 (finding oral and written warning did not constitute adverse actions for purposes of retaliation claim).

The denial of auxiliary assistance on April 20, 2017 is also not an adverse employment action.   See Danielson, 764 F. App'x at 623 (finding that denial of auxiliary assistance request was not an adverse action for purposes of retaliation claim under the FLSA where the plaintiff had restricted hours and could not be forced to work in excess of eight hours per day).

Defendant's directive that Plaintiff should no longer use the comfort stop at Christopher Court is not likely to dissuade a reasonable worker from making or supporting a charge of discrimination.   Plaintiff has not shown that her inability to use this restroom imposed such a substantial burden on her that it would rise to the level of an adverse employment action or had some other cognizable material impact.

Plaintiff cannot establish a prima facie case, because the undisputed facts do not constitute action that "would have dissuaded a reasonable worker from bringing a discrimination charge." Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007).   Even in the broader view of what may qualify as retaliation, Plaintiff's clams fail.   Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 224–25 (E.D.N.Y. 2014) ("The scope of actions that may be

materially adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by Title VII's anti-discrimination provisions […]").

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


**SO ORDERED.**

Dated:   September 30, 2022
         Central Islip, New York


                 ___/s/   (JMA)_____
                 JOAN M. AZRACK
                 UNITED STATES DISTRICT JUDGE